CHAMPNEYS *against* LYLE and others, assignees of RICHARD MARIS and JOHN DAVIS, bankrupts.

*Saturday,*
*April 2.*

THIS was an action for money had and received to the plaintiff's use. On the 11th and 15th *April* 1801, *Champ-neys*, as the surety of *Maris*, executed three bonds to the *United States* for duties upon goods imported, which he afterwards paid. *Maris* became a bankrupt within the act of Congress passed the 4th of *April* 1800, and this action was brought against his assignees to recover the full amount of the sum paid to the *United States*, with interest up to the time of judgment, in preference to the other creditors. The jury found a verdict for the plaintiff for his whole demand, subject to the opinion of the court upon two points:

The prefer-
ence given
by the act of
1st March
1799, to
sureties in
custom-
house bonds
who pay the
same to the
United
States, is not
taken away
by the bank-
rupt act; the
surety is en-
titled to pri-
ority of pay-

1. Whether the preference given to sureties in bonds for the payment of duties by the act of 1st *March* 1799, was taken away by the bankrupt act of 4th *April* 1800.

2. If not, then whether the plaintiff was entitled to recover interest subsequent to the date of the commission of bankruptcy.

ment out of
the bank-
rupt's estate
for both
principal and
interest.

By the 65th section of the " Act to regulate the collection of " duties on imports and tonnage," it is enacted that in all cases of insolvency, or where any estate in the hands of the executors, administrators or assignees, shall be insufficient to pay all the debts due from the deceased, the debt due to the *United States* on any bond for the payment of duties shall be first satis-

fied; and if the principal be insolvent, and the surety shall pay, he shall have the like advantage, priority, or preference, for the recovery of the money out of the estate and effects of the prinpal, as are reserved to the *United States.* It also provides that on all bonds on which suits shall be commenced, an interest shall be allowed, at the rate of six per cent. per annum, from the time when they became due, until the payment thereof.

By the 31st section of the " Act to establish a uniform sys-" tem of bankruptcy," it is enacted " that in the distribution of " the bankrupt's effects, there shall be paid to every of the credi-" tors a portion rate, according to the amount of their respective " debts, so that every creditor having security for his debt by " judgment, statute, recognisance, or specialty, or having an at-" tachment under any of the laws of the individual states or of " the *United States* on the estate of such bankrupt, provided " there be no execution executed upon any of the real or per-" sonal estate of such bankrupt before the time he or she be-" came bankrupt, shall not be relieved upon any such judgment, " statute, recognisance, specialty, or attachment, for more than " a rateable part of his debt, with the other creditors of the " bankrupt;" and the 62d section enacts " that nothing in " this law contained, shall in any manner *affect the right of* " *preference to prior satisfaction of debts due to the Uni-* " *ted States, as secured or provided by any law heretofore* " *passed.*"

The points were argued by *Milnor* and *Ingersoll* for the plaintiff, and by *Rawle* for the defendants.

For the plaintiff. The first question is whether the bankrupt law *constructively* repeals the provision in the 65th section of the act of 1799 which gives the plaintiff a preference, for it is clearly no repeal *in terms.* In the case of constructive repeals, it is requisite that a plain intention to this effect should be shewn by the legislature; for if the statutes can stand together, it shall be presumed to be so intended until the contrary manifestly appears. That a repeal could not have been intended by Congress, is obvious from many circumstances. In the first place, the case of the plaintiff, a case of clear preference prior to the bankrupt act, is not enumerated in the 31st section, with

those securities and preferences which Congress meant to defeat. In the next place, the 62d section expressly saves the priority belonging to the *United States*, and the plaintiff stands in their shoes. But further, the preference given by the act of 1799 is not confined to a surety who pays for his bankrupt principal, but it extends to the case of voluntary assignments, and affects the estate of a person who dies without assets to pay all his debts. Now the repeal can go no further than to defeat the preference in case of bankruptcy; and then the other priorities remain, which is absurd. But if the repeal has taken place, what is there to preserve the preference to sureties who have executed and paid the bonds *before* the bankrupt law? There is no difference between these and subsequent bonds, all are affected or none; and the argument for a repeal therefore supposes a monstrous breach of faith. The obvious policy of the law of 1799 is to induce persons to become sureties, and sureties to pay the money, by promising them a security; and it cannot be credited that the legislature would be satisfied to withdraw such a promise, in an ambiguous manner.

The second question depends altogether on the first. The rights of the *United States* are preserved, and of course with them a right to the interest, which the law directs to run on until the payment of the bond. If the surety is entitled to the " like advantage, priority, and preference," his title must go the whole length. The reason for limiting the interest in common cases to the date of the commission, does not apply. The fund being dead, it is all the same to creditors who must share *pro rata*, whether interest runs on or not. Even in the case of a mortgage, the assignees if they wish to redeem, must pay full interest. 1 *Co. Bankrupt Law*, 182.

For the defendant. Every affirmative statute is a repeal by implication of a precedent affirmative statute, so far as it is contrary thereto. 11 *Rep.* 61. *Foster's case.* The question then is, whether the provisions of the bankrupt act are opposed to the preference given by the act of 1799. That the policy of the law is opposed to it, there can be no doubt. It proceeds with a view to divide the property of an insolvent rateably among all his

1808.

CHAMP-
NEYS
*v.*
LYLE.

creditors, and is in open hostility to such preferences as an in-
solvent makes before an act of bankruptcy in contemplation of
that event. Its provisions are also opposed to it. The single
case in which the creditor of a bankrupt is entitled to a pre-
ference under this law, is that in which he has a specific
lien, a mortgage, a pawn or pledge, or an execution exe-
cuted; and the reason of it is, that the assignees cannot ask
equity from the holders of the property without doing com-
plete equity to them. But even in this case, if the lien creditor
asks to come in under the assignment for a balance beyond the
value of the pledge, he must come in as other creditors, so that
his security arises solely from possession of the property, and
is limited to that extent. 1 *Co. Bank. Law* 161. The preference
under the law of 1799 must therefore cease by reason of the
general provisions, unless it is expressly saved; whereas the
argument for the plaintiff supposes that it will stand from its
being consistent with them, unless it is expressly taken away.
The constitutionality of the preference to the surety has always
been questioned, and suffering it to fall in consequence of its
collision with a subsequent act, was the best way of terminating
it. But it is said that the preference is expressly saved to the
*United States.* This is still worse for the case of the plaintiff;
for the express saving of the rights of one person, shews an in-
tention not to save the rights of others. As to the effect of the
bankrupt act upon bonds given prior to its date, the question
does not arise; these bonds were given and paid subsequent to
that law.

The question of interest does in some measure depend upon
the other; but this is a question as to the *extent* of interest,
and not whether any is chargeable. Now there is not a case of
any kind in which a person claiming from the bankrupt fund,
even if he has a specific pledge in his hands, is entitled to in-
terest after the commission. The fund earns nothing, and
should therefore pay nothing. It is not like the case of as-
signees asking to redeem; it is the case of a person claiming
from the fund, and not from the individual. The act of 1799
does not extend the preference to the interest; the provision is
introduced to prevent a doubt that the bond after failure of
payment carries interest.

TILGHMAN C. J. delivered the opinion of the court.

The plaintiff was bound as security for *Richard Maris*, in sundry bonds to the *United States*,.for duties on goods imported, dated 11th *April* 1801. The plaintiff paid those bonds, and *Maris* became a bankrupt. Two questions are now submitted to the court.

1. Whether that preference which was given to sureties in bonds for duties, by the 65th section of the act of Congress, " to regulate the collection of duties on imports and tonnage,". (*March* 1st 1799) was taken away by the act " to establish an " uniform system of bankruptcy throughout the *United States*." (*April* 4th 1800.)

2. If such preference is not taken away, then, whether the plaintiff is entitled to recover interest subsequent to the date of the commission of bankruptcy.

The 65th section of the act to regulate the collection of duties &c. provides that in case of insolvency of the obligors, or in case of their death, and not leaving sufficient assets to pay all their debts, the debt due to the *United States* on bonds for duties, shall be *first* satisfied; and that if any surety in such bonds shall pay to the *United States* the money due thereon, " he shall have and enjoy the like advantage, priority, and pre- " ference, for the recovery and receipt of the said money, out " of the estate and effects of such insolvent, or deceased prin- " cipal, as are reserved and secured to the *United States*."

The bankrupt law provides in general for the equal distribution of the bankrupt's estate among his creditors, without any preference, except as to those creditors who had liens existing at the date of the act. But it is enacted by the 62d section, that nothing contained in that law " should in any manner affect the " right of preference to prior satisfaction of debts due to the " *United States*, as secured or provided by any law theretofore " passed."

It would have been an act of such extreme injustice to take away from sureties in custom-house bonds, that preference which had been assured to them, and on the faith of which they became bound to the *United States*, that nothing but the clearest expressions could induce me to suppose that congress

CHAMP-
NEYS
v.
LYLE.

had such intention. And whatever is the construction of the bankrupt law with respect to bonds passed before its date, it must be the same as to bonds of subsequent date; for not the least distinction between them is to be found in the law. Now it appears to me, that the provision in the 62d section of the bankrupt law, that nothing therein contained should affect the " right of preference to prior satisfaction of debts due to the " *United States*, as secured by any prior law," may fairly be construed so as to preserve the *whole right* of preference, touching these debts, whether that preference was given to the *United States*, or to sureties in the bonds. I am the more inclined to adopt such construction, because otherwise, not only would the *United States* be chargeable with the flagrant injustice I have mentioned, but with the *absurdity* of taking away the preference of sureties in case the principal became a *bankrupt*, but leaving it untouched when he died, not a bankrupt, but with an estate insufficient for the payment of all his debts. Besides, the general creditors of the bankrupt would derive but little advantage from the construction contended for; because the preference of the *United States*, is undoubtedly preserved, and they might and ought to call on the assignee for payment of the *whole debt*. Had congress thought, as has been suggested by the counsel for the defendants, that the preference of sureties was in its nature unjust, and perhaps not strictly warranted by the constitution, they surely ought to have openly abolished it altogether, (taking care that no injury should arise to those persons who had acted under the faith of an existing law) and not have made a *partial* repeal, in the *obscure* manner in which it is said to have been effected by the bankrupt law.

I am therefore of opinion, that the bankrupt law did not repeal those provisions in former laws, which in cases of bankruptcy gave a preference to sureties in custom-house bonds.

As to the second point, the 66th section of the act to regulate the collection of duties &c. enacts, that " on all bonds on " which suits shall be commenced, an interest shall be allowed " at the rate of six per cent. per annum, from the time when the " said bonds became due, until the payment thereof;" no distinction is made between suits brought by the *United States*, and by the sureties. Being of opinion then, that no part of the

advantage given to sureties by this law is taken away by the bankrupt law, I must also be of opinion that the *interest*, which is part of that advantage, is recoverable in a suit brought by the surety against the assignees of the bankrupt.

<div align="right">

1808.

CHAMP-
NEYS
*v.*
LYLE.

</div>

Judgment for plaintiff.