The opinion of the court was delivered by
Tilghman, C. J.
There is but one question in tins case, and that is, whether the bond and other specialty creditors are entitled to interest on their debts after the decease of the intestate, the estate being insufficient to pay the debts due both by specialty and simple contract. The order in which the debts of a deceased person shall be paid, is prescribed by the act of 19th April, 1794, sect. 1.4, 3 Sm. L. 143. The fifth in this-order, are bonds and *184 specialties, after which, all other debts are to be paid, without regard to their quality, except debts due to the commonwealth, which are to be last paid; but if there shall not be assets sufficient to pay such bonds and specialties, and other debts, “in such case, the same shall be averaged, and the said creditors paid pro rata, or an equal sum or proportions in the pound as far as the assets will extend, first paying the bonds and specialties.”
The counsel for the appellant, contends, that where the assets are insufficient to pay all the debts, no interest shall be allowed after the death of the intestate; and he founds his argument on the the principle adopted in the construction of bankrupt laws, where no interest is allowed after the commission of the act of bankruptcy. But the policy of the bankrupt laws, is different from that of the act of assembly under consideration. In cases of bankruptcy, the main object is, to make an equal division among all the creditors, and for that purpose, the estate of the bankrupt is vested in his assignees, by relation, from the time when the bankruptcy was committed. And even judgment creditors, lose their preference, unless they have sued out an execution, and had it executed, before the act of bankruptcy was committed. But the object of the act of assembly in' question, was, not to distribute the estate of the deceased among all the creditors equally, pro rata; but to define the order in which debts of different qualities should be paid; and for that purpose, the debts are divided into classes, according to their quality. The debts in the first class are to be paid first, and so on, according to the number of each class. But there was no intention to make any deduction from the debts of one class, in order to let in those of another. Debts by bond and other specialties, which constitute the fifth class, are to be paid before debts by simple contract, which are included in the sixth class. But, what is meant by a debt on bond? I take it to be the sum which would be recovered by a suit on the bond; that is, the principal and interest to the time of payment. . The judgment on a bond, is-for the penalty, which is the legal debt, to be released on payment of principal, interest and costs of suit. And if the debt is due on what is called a single bill, (or bond without penalty,) interest is always recovered to the time of the judgment. In the case of Champneys v. Lyle, 1 Binn. 327, it was decided, that urider the act of congress, which provides, that in case of the insolvency of the obligors in custom-house bonds, or of théir death, and not leaving sufficient assets to pay all their debts, the debts due to the United States on bonds for duties, shall be first satisfied; the interest, as well as principal, should be paid. The act of assembly did not intend to deprive the bond creditor of any part of his debt, in order to make way for simple contract creditors. It should be construed according to common parlance, in which, interest is always understood to be included, when specialty debts are spoken of. This is not the first act of assembly in which *185 the order of payment of the debts of deceased persons is prescribed. There was an act for that purpose made in the year 1705, but the order in the act of 1794, is somewhat different, and the idea of paying pro rata, where there are not assets sufficient to pay the whole debts, is there introduced for the first time. But this pro rata payment only takes effect between creditors of the same class. For instance, if there should be assets exactly enough to pay the first four classes, they must be all paid, and the specialty creditors would get nothing; but if there were sufficient to pay the first four classes, and something more, the surplus would be distributed among the specialty creditors pro rata. The argument in favour of stopping the interest, at the time of the intestate’s death, was as strong, under the former act of assembly, where there were no pro rata payments, as under the act of 1794. For by the act of 1705, it was énacted, that the debts due from the deceased, at the time of his decease, (the very words of the act of 1794,) should be paid in a certain order; and it might as well have been contended under that act, that the debts of the deceased person were the exact amount due at the time of his death, and no more. But I have never heard it suggested, that if a bond creditor had brought suit against an executor or administrator, before the year 1794, he should lose any part of his interest, because there were not assets sufficient to pay the simple contract creditors. On the contrary, I believe it was invariably understood, that the whole interest should be received. So, that I presume, there has been an ancient, and well settled construction given to acts of assembly on this subject, and that is the reason we find no judicial decision on the point. I am of opinion, therefore, that the decree of the Orphans’ Court was right, viz: that interest; should be calculated to the.time of the apportionment of the assetts by the report of the auditors.
The decree is affirmed*