BURTON (SAMSON v.). See Cases Nos. 12,285 and 12,286.

BURTON (SEARCY v.). See Case No. 12,584.

## Case No. 2,219.

### BURTON et ux. v. SMITH.

[4 Wash. C. C. 522.][1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1825.

MARRIAGE SETTLEMENT — CONSTRUCTION — COMPELLING EXECUTION OF TRUST—PARTIES.

1. Deed of settlement tripartite between A, B and C, by which, after reciting an intended marriage between B and D, A assigns to C a bond and mortgage for $4,000 for the separate use of B, upon trust that C, his heirs, &c., shall keep the said sum out at interest on said securities, or in case the same should be paid off, shall invest the same in other good land security, and receive and pay over to B the interest which should grow due thereon. C signed and sealed the deed and accepted the trust. The $4,000 were paid to him, but he neglected to invest it in other real security, and died, leaving real property and debts, greatly exceeding the value of his personal estate. Bill filed by B and D her husband, against the administrator of C for an account, and that the $4,000 may be decreed to be a specialty debt due by the intestate, and may be invested by the administrator on real security, and held by him as trustee under the trusts in the deed of settlement. Decided, that the deed amounted to a covenant of C under seal to execute the trusts, and that the $4,000 is a debt by specialty, and to be paid by defendant as such, although there was no substantive covenant by his intestate to execute the trusts.

2. In this case, there was no necessity to make the other creditors of C parties to the suit, nor would it be proper, except in a case of collusion with the executor or administrator.

In equity. The bill states, that before the intermarriage of the plaintiffs, an indenture tripartite was made between Samuel E. Howell, and R. R. Smith, executors of Samuel Howell, of the first part, Hannah L. Howell, the female plaintiff, of the second part, and the defendant's intestate, William E. Howell, of the third part, which, after reciting a bequest of £3.000 by Samuel Howell to his granddaughter Hannah L. Howell, an intended marriage between her and Burton, and an agreement that two bonds and mortgages, one for $2,400 and the other for $4,000 should be settled upon the trusts stated in the deed; the said Samuel E. Howell and R. R. Smith, the executors, assigned to William E. Howell, the intestate, the two bonds and mortgages aforesaid, upon certain trusts for the separate use of the wife during her life, and after her death, over to other uses not necessary to be stated. The material clause in the deed, upon the construction of which the cause turns, is the following: "Upon trust, that the said William E. Howell, his heirs, executors, &c., shall keep the said sums of $4,000 and $2,400, out at interest upon the securities aforesaid, or in case the same should be paid off, then upon other good and sufficient land security, and receive the interest thereof due, and hereafter to grow due, and pay over the said interest when, and as the same shall become due, into the hands of the said Hannah, &c. The bill further states, that William E. Howell accepted the trusts, and agreed to perform the same, and sealed and delivered the indenture as his act and deed. That he took the bonds and mortgages into his possession, received the interest, and from time to time paid part of it to Mrs. Burton, but never settled any final account of his trust. That the bond of $4,000 was paid off to the intestate, but was not invested by him in other good and sufficient land security, or in any other security, but was applied to his own use, without the knowledge and consent of Mrs. Burton. That upon the death of William E. Howell in 1822, administration of his estate was granted to the defendant, who received the bond for $2,400, and took upon himself the trusts of the indenture by receiving the interest; but that he has not invested the $4,000 in good land security, or paid the interest to Mrs. Burton. The bill then charges that the $4,000 so received, and not invested, is a debt by specialty, and that the defendant has sufficient assets to pay it, and to invest the full amount in good land security without prejudice to any creditor of equal or superior degree. The prayer of the bill is for a discover of the intestate's assets and real estate, of the quality and amount of his debts, and that the sum of $4,000, received by

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

William E. Howell, and the interest on it, may be declared a debt by specialty, and payable as such by the defendant. That he may be decreed to invest the same in good land security, and that if there should be a deficiency of personal estate, the defendant may apply to the orphans' court to sell the real estate, and to invest the same in his own name and that of some other person to be appointed by the court. That he may account; and for general relief.

The answer admits all the allegations of the bill, and annexes a statement of the intestate's real and personal estate, and of his debts, which exceed the amount of the personal assets. It alleges that the creditors deny that the plaintiffs are specialty creditors, and asks that the other creditors may be made parties, that the court may decide between them and the plaintiffs; that the defendant declines accepting the trust, and has no objection to the appointment of another trustee. [Decree for complainants.]

On the part of plaintiff it was contended, 1. That the $4,000 received by the intestate, and not invested according to the terms of the trust, with the interest due upon it, is a debt due by specialty, the deed amounting to an agreement by the intestate to invest it in good landed security, and that agreement being under his hand and seal. Cases cited, 1 Bin. 254; 2 Mod. 91; 1 Lev. 47; 6 Vin. Abr. p. 378, pl. 7, 377; Hill v. Carr, 1 Ch. Cas. 294; 1 Atk. 88; 17 Ves. 485; 19 Ves. 638; 1 P. Wms. 130. 2. That it was not necessary to make the other creditors of the intestate parties. Peacock v. Monk, 1 Ves. Sr. 131; Newland v. Champion, Id. 106; Johns. Eng. Ch. 437.

For the defendant it was insisted, that the execution of the deed amounted to no more than an acceptance of the trust, and that the defendant having entered into no express covenant or agreement to invest the money when paid off in other security, his failure to do so was a mere breach of trust, which creates no more than a simple contract debt. 2 Mod. Ch. Pr. 123; Vernon v. Vawdry, 2 Atk. 119; Barnard. 280; Cox v. Bateman, 2 Ves. Sr. 19; Cas. t. Talb. 109; Bartlett v. Hodgson, 1 Durn. & E. [Term R.] 42. Upon the second point, he insisted that the simple contract creditors had important interests to defend against the plaintiffs, who claimed to be specialty creditors, and therefore ought to be heard.

Mr. Binney, for plaintiff.
Mr. Chauncey, for defendant.

WASHINGTON, Circuit Justice, delivered the opinion of the court.

The question which arises out of the merits of this case is, whether the $4,000 received by the intestate, and not invested by him in good land security, be a debt due by specialty or not? That it is not a debt of this dignity, is contended for by the defendant's counsel, upon the ground that the deed of settlement contains no substantive agreement or covenant on the part of the intestate, the trustee, to make such an investment, or indeed to perform any act whatever; and consequently, that his failure to make it was a mere breach of trust, which creates only a simple contract debt. But this argument seems to the court to be opposed, not only to many adjudged cases, but by a well established principle of law; which is, that any words will be effectual to create a covenant which show the concurrence of the parties to the performance of a future act. In Bac. Abr. tit. "Covenant," A, it is laid down as a general principal of law, that wherever the intent of the parties can be collected out of a deed for the doing or not doing a particular thing, covenant will lie. The cases which exemplify the principle are numerous, of which a few only need be stated. In a lease for years, upon condition that the lessee shall keep and leave the houses at the end of the term in as good plight as he found them, if he does not leave them in such repair at the end of the term, an action of covenant will lie. So the words "and the lessee shall repair and leave the houses sufficiently repaired," amount to a covenant by the lessee to do those acts, not because there is any express covenant in terms, but because it is the clear agreement and understanding of the parties that they should be performed. The case of Lord Montfort v. Lord Cadogan, 17 Ves. 485, and 19 Ves. 638, was that of a settlement of a renewable lease upon an intended marriage, in trust for Lord Montfort until the marriage, and afterwards that the trustee should pay the fines of renewing, and, subject thereto, in trust for the husband, and after his death, for the wife, &c. The court decreed that the trustees, not having renewed, as they might and ought to have done, were liable as for a breach of trust, although there was no express covenant by them to do so, nor had they executed the deed; yet in equity, they had undertaken to execute the trust as much as if they had executed it. It is observable, that in none of the above cases is there any substantive agreement by the party charged to do any act whatever. The decisions proceed no doubt upon the ground that, from the whole scope and design of the agreement, it was the intention of the parties that certain acts should be performed by the person sought to be charged, which amounted to an implied agreement on his part to perform them, and this agreement, being under his hand and seal, it amounted to a covenant, for which that action would lie. The case of Gifford v. Manley, Cas. t. Talb. 108, is another very strong authority on this subject, which ought not to be overlooked. Four hundred pounds were vested in two trustees, A and B, to be put out at interest, and the interest to be paid to the husband and wife during their lives, and after the death of either, then to be paid to their survivor, &c.;

and it was agreed that neither of the trustees should be answerable for the acts of the other. A, alone, received the money, for which he gave a receipt, and, by writing under his hand and seal, declared that B had received no part of the money, but that he had received the whole. A never invested the money, and died insolvent. It was decided that the trust deed created a contract that the trustees should lay out the money, and that one should not be answerable for the other, and that as A had, by a paper under his hand and seal, acknowledged that he received the money, he is answerable; and not having laid it out as he was bound to do by the agreement, he had broken his covenant.

Now, here, there was no express covenant or stipulation whatever in the deed of settlement, or in the receipt given by the trustee who received the money, to put the same out at interest, or to pay the same to the cestui que trusts. But the whole design of the settlement was that these acts should be performed, and the persons to perform them could be no other than the trustees. This case is not only an authority to establish the principle upon which this part of the case rests, but another equally material to be decided in this case, which is, that wherever the parties have agreed, either expressly or by implication and construction of law, to do a particular act, if the instrument be under the hand and seal of the one who is sought to be charged, an action of covenant will lie against him at law, as upon a specialty; and that equity treat such agreements as specialties when an application is made for a specific execution of them.

This case establishes another point, and the only remaining one involved in this cause; which is, that the money so received by the trustee, and not invested as he was bound to do by the deed of settlement, was a specialty debt, "there being," in the language of the court, "no other definition of such a deed but that it is under seal." The cases of Cross v. Northey, 6 Vin. Abr. p. 378, pl. 7, Benson v. Benson, 1 P. Wms. 130, and Primrose v. Bromley, 1 Atk. 89, are all full to this point. But the case upon which we chiefly rely is that of Frazer v. Tunis, 1 Bin. 254, because it gives us the opinion of the supreme court of this state, upon the construction of the terms, "debts due by specialties" as used in the act of assembly; and decides, that a claim against an intestate's estate for damages for the breach of articles of agreement under seal, is a debt by specialty, within the meaning of the act. As to the position of the defendant's counsel, that a breach of trust is but a simple contract debt, and can only fall on the personal estate of the trustee, it is unquestionably true in all cases where the trustee is not otherwise bound to execute the trusts in the deed than by a parol acceptance of the trust, or by acts done under it, proving such acceptance. This must generally be the case

in the numerous instances of trusts created by last wills, and in others where, being created by deed, the same is not under the hand and seal of the trustee. The cases cited by the defendant's counsel—Vernon v. Vawdrey, 2 Atk. 119; Cox v. Bateman, 2 Ves. Sr. 19; 2 Mad. 132—go no further than this, as in none of them does it appear that the trustee executed the deed under his hand and seal.

It only remains to test the case, now under consideration, by the principles and decisions which have been stated. The deed of settlement recites the intended marriage between the plaintiffs, and an agreement that the two bonds and mortgages, for $4,000 and $2,400, should be settled upon the trusts stated in the deed—that is to say, upon trust that the trustee shall keep the said sums of money out at interest upon the aforesaid securities, and in case they should be paid off, then that he shall keep or place them (words which the obvious sense of the instrument requires to be supplied) upon other good and sufficient land security, and shall receive the interest as it shall become due, and pay the same over to the sole use of the female plaintiff. That the intention of all the parties was that the trustee should invest the above sums when paid off, in other good land security, and should receive and pay over the interest to the cestui que trust, is unquestionable; nor could it have been made more apparent, if he had, by a separate clause, covenanted expressly to do it. The instrument declares that he shall perform those acts, and by affixing his hand and seal to the instrument, he agreed under that solemnity to do them. How is it possible to distinguish this case from the one before referred to of a lease for years, and that the lessee shall repair and leave the buildings sufficiently repaired, or upon condition that the lessee shall repair, &c.? In the case of Lord Montfort v. Lord Cadogan, the words are that the trustee should pay the fines of renewing, which are equivalent, and no more than equivalent to the corresponding expressions in this deed. How much stronger is this than the case of Gifford v. Manley, where the expressions are, "that the money was to be put out to interest, and the interest to be paid to the husband and wife;" which merely describe the object and design of the settlement. The subsequent receipt and acknowledgment of the trustee import no agreement whatever, express or implied; but, being coupled with the deed of settlement, they give to the deed the dignity of a specialty. We are upon the whole clearly of opinion that the $4,000, and the interest due upon it, must be considered as a debt due by specialty from the intestate.

The remaining question is, whether the other creditors of the intestate need be made parties defendant to the suit? We think they need not, and that it would have been improper to have made them parties. The

administrator is a trustee, whose office and duty it is to defend the estate of the intestate for the benefit of the creditors and legatees. For this purpose he so far represents them, that they are bound by any judgment or decree against him, which, by affecting the assets, may affect their interests. This is clearly the general rule: to which, under particular circumstances; as in cases of collusion with the executor, or administrator; there may be exceptions; but this is not such a case. In the case of Peacock v. Monk, 1 Ves. Sr. 127, it was admitted by the counsel, who objected to the want of parties, that, generally speaking, on a demand against an executor, it is not necessary to bring the creditors before the court, the executor being the proper person to defend; but they endeavoured to make an exception in that case, on the ground that the demand was out of a specific thing, and not out of assets, and that the executor, being one of the contractors, might be partial. But the objection was, even in that case, overruled, upon the principle before mentioned. The same doctrine is laid down in the case of Newland v. Champion, Id. 106, and in the case of Wiser v. Blachly, 2 Johns. Ch. 488. See, also, 2 Madd. Ch. Pr. 152, in which it is laid down, as a general rule, that the creditors cannot be made parties defendants. We are therefore of opinion that this objection cannot be maintained.