## STULZFOOS' APPEAL.

Appeal of STULZFOOS and others in the matter of the distribution of the money arising from the estate of J. HAMILTON, deceased.

A decree of the court of Common Pleas which does not distribute the whole fund raised upon the sheriff's or coroner's sale of real estate, is not final; and in case a creditor is not satisfied with a partial appropriation of the fund, he must wait untill a decree is made distributing the entire fund, when he may appeal, and have redress for any error committed in such partial appropriation.

A specialty creditor who is entitled to be paid out of the proceeds of real estate of his deceased debtor, sold by the sheriff and brought into court, is entitled to be paid interest to the time the fund is raised, and not up to the time of the decree.

In such distribution a specialty creditor whose claim is for unliquidated damages on articles of agreement for a breach before the distribution, is entitled to be paid, although the covenants were not broken at the death of the decedent, in such case a verdict and judgment may be necessary to ascertain the sum; but where the agreement or bond is to pay a certain sum on a particular event, and that event has happened, it is as much a matter of calculation, as if to be paid at a certain time, and that time has arrived.

Under certain circumstances the Supreme Court will suspend their decree, upon appeal from a decree of the Common Please for the distribution of the proceeds of real estate, sold by the sheriff or coroner, for further proof.

This was an appeal from the decree of the court of Common Pleas of *Lancaster* county distributing the money raised by the sale of the real estate of *James Hamilton* deceased, which sale was made by the sheriff on execution after the death of *Hamilton*. The appeal was taken by *John Stulzfoos, Peter Eckert*, and *Abraham Royer*. They claimed to be paid, as specialty creditors, upon a covenant of title, the amount of damages which they had incurred by an eviction. Hamilton the intestate having previously taken in right of his wife, the real estate of his father-in-law one *Carrigan*, who died intestate in 1791, articled to convey clear of all incmbrance to *Peter Eckert, Abraham Royer*, and *Chris-*

34

(Stultzfoos' appeal.)

*tian Ryer*, and executed separate deeds to them for the land, which he had taken at the appraisement.

In 1796, he received one hundred pounds of the purchase money, and gave to the purchasers a bond of indemnity against all claims and demands of all persons against said land.   In 1800 *Hamilton* received, as guardian of his daughter *Catharine* three hundred pounds, and executed a release for it, covenanting against her, or any claiming under her, any part of the land so sold.   *Catherine* intermarried with *Geo. Jenkins*, and in 1818 brought an ejectment against the purchasers, and in 1825 this ejectment was finally decided in their favor, and the plaintiff recovered forty-one acres, and two quarters, the value of which, costs on eviction, counsel fee, &c. amounted to sixteen hundred and ninety eight dollars and forty-five cents, exclusive of *mesne* profits; which were agreed to be three hundred dollars.   The appellants claimed these sums on the said covenants of *Hamilton*, who died before they were broken, or any damages had been incurred upon them.   In 1827 the appellants had petitioned the Common Please ot make distribution of the fund, and claimed as specialty creditors of *Hamilton*.   The Court then directed the payment of certain judgments rendered against *Hamilton*, and rejected the application of the appellants, but did not distribute the whole fund.   The appellants, then appealed to the Supreme Court, and the Supreme Court quashed the appeal, because no final decree had been made, and remanded the record directing the court below to proceed to a final distribution, and decree.   On the 22nd of January 1830, the appellants again moved the court of Common Pleas to make a final decree, which that court did, by rejecting the claim of the appellants, and distributing the balance of the fund to other specialty creditors, and to simple contract creditors, computing interest on the debts by specialty up to the time of the decree, and on the simple contract debts to the 24th of June, 1825, when the fund was raised upon the sale of the real estate of *Hamilton*.   An affidavit was filed at the time of the decree, that a judgment of one *Grayson* assignee of *Whitaker*, executor of *Wray*, against the intestate was satisfied by the payment of a judgment against one *George Jenkins*, in favour of the same plaintiff, to the same term; which *George Jenkins*, it was testified by the same affidavit was the principal debtor in the bond on which both of the said judgments were entered, and that *Hamilton* was but a surety.   Accompanying this affidavit, *Wm. Jenkins* the assignee of *George*, filed a paper, disclaiming the payment of this judgment against *Hamilton* as unjust and illegal.   Upon this evidence the appellants and others creditors of *Hamilton* moved the court to exclude this judgment from the distribution, "and that the money drawn from the prothonotary illegally and inad-

vertantly thereon" "be refunded for distribution." The court had, in 1827 decreed this judgment among others to be paid, and in their decree *now*, recited the decree *then*, and distributed the balance which remained and did not exclude the judgment of *Grayson*.

The following errors were assigned:

1 that the appellants were entitled, under the 14*th Section of the Act of Assembly* regulating intestate estates, passed the 10th of April, 1794, to be paid out of the money paid into court, the damages, and all the costs, incurred by them by the failure of *Hamilton's* title to them and their eviction, with reasonable counsel fees.

2. That if any incertitude arose in the mind of the court, with respect to the liquidation of the claims of the appellants which they thought ought to have been passed upon by a jury, it was the right and duty of the court to have directed an issue to try and ascertain them, and not to allow a right to perish for want of a remedy.

3. The court erred in not directing the money, ordered by the court to be paid in the suit of *John Grayson* assignee of *John Whitaker* executor of *Stephen Wray*, deceased, v. *James Hamilion's* executors, to be refunded, as it had been paid before said order was made, by the real debtor, *Hamilton* being surety merely, and which was refused to be received by the plaintiff.

*Hopkins*, for the appellants,

*Porter* contra.

The opinion of the court was delivered by

Houston, J.—*J. Hamilton* died indebted to sundry persons on judgments in his lifetime, to the appellants on specialties, but on which nothing was due at *Hamilton's death*, but on which monies were due before the money brought into court, and are still due; and also on sundry simple contracts on which suit had been brought and judgments obtained at the time of the decree.

On the 30th of June. 1827, the Common Pleas made a partial distribution of the money in court, directing certain judgments to be paid. They also decided that they would not notice the claim of the appellants, because nothing was due on it at the death of *James Hamilton*, but they did not distribute the whole fund. The appellants appealed, see 13 *Serg. & Rawle*, 299. The appeal was dismissed, because that court had made no final decree, and this court would not hear a discussion and give a decision on every interlocutory decree in such case.

When the cause went back, that court, after stating that they had before directed payment to certain judgment creditors, proceed to say we could not then, nor can we now recognise the claim of *Stulzfoos*, *P. Eckart, and C. Royer*, and then proceed to direct payment to

(Stukefoos' appeal.)

*Catherine Henderson*, and *Nathaniel Watson*'s executor with interest until the 31st of January, 1831, and state that "this is done in consequence of the decision in *Shultz's Appeal*, 11 *Serg. & Rawle*, 182, which decides that where the estate of a deceased person is not sufficient to pay specialties, and simple contract creditors, the creditors by specialty shall have interest up to the payment of their respective debts" and then proceeded to distribute the remaining money *pro rata* among the creditors, by simple contract who had obtained judgments. The appellants have brought this matter again before this court.

The case in 11 *Serg. & Rawle*, 182, is inapplicable to this case. There, the money was not raised on an execution, nor raised at all so far as we know, but the administrator having ascertained that there would not be sufficient assets to pay all the debts, had applied to the court to appoint auditors.

But in this case the money was raised by a sale of lands of *Hamilton*, and brought into court for distribution. So far as that money would go in the discharge of the debts, they were paid by the levy of that money; and interest ceased on the 24th of June 1825. That part of the decree allowing to *Catharine Henderson* and *Watson's* executors, interest after the 24th of June 1825, is reversed.

It has been contended that because the judge decided against the appellants several years ago, and the appeal then taken, was dismissed, that there is no redress now. It is often right where there is money enough to pay one class of creditors, those by judgments, for example, to pay them, and not detain the money while other creditors who must come after them, are disputing; but if one creditor by judgment thinks himself then agrieved, he cannot appeal till the final decree, and must be heard in this court then, although the court rejected his claim a year before the final decree. The reason first given by the court, to wit: that no money was due on the specialty, when *Hamilton* died, has not been even attempted to be supported here, and could not be. *Frazer & Dunwoody's* administrator, 1 *Binn*. 254.

It was also said that the appellants had not brought suit on their agreements, and bond, nor is this necessary. The order of payment is fixed at the death of the debtor. A bond creditor took the money from one who had obtained judgments on a simple contract and levied and sold the land. *Bank* v. *Stambaugh's administrators*, 3 *Serg. & Rawle*, 299. *Reed* v. *the Commonwealth*, 11 *Serg. and Rawle*, 441. Where the claim is for unliquidated damages on articles of agreement a verdict and judgment may be necessary to ascertain the sums, but where the agreement, or bond is to pay a certain sum on a particular event, and that event has happened, it is as much a matter of calculation, as if to be paid at a certain time, and

(Stulzfoos' appeal.)

that time has arrived.    The facts as proved are, that the appellant having doubts about the title of *Catherine,* one of the daughters, took on the 31st May, 1796, a bond of indemnity for 400*l* then paid, and afterwards in 20th may, 1800, *Catharine,* and her father, representing her as of age, executed a release.    She afterwards proved that she was at that time above *eighteen,* but under twenty one, and recovered her share.    At that time, her father received three hundred pounds.    The measure of damages on eviction is the purchase money, and interest from eviction, when there is no fraud.    Probably *Hamilton* thought, as well as the appellants, a woman is of age at eighteen, an opinion two common, and originating from our act of assembly directing female children to be bound as apprentices till that age.

| | |
|---|---:|
| The appellants then are entitled to 400*l,* | 1066,66 |
| And interest from 16 May, 1825, the time judgment in ejectment was confirmed, till 24 June 1825, when the money was raised, | 6,89 |
| The costs on the ejectment | 127,48 |
| Counsel fees for two trials in Common Pleas and Supreme Court. | 200,00 |
| Costs in Supreme Court. | 40,97 |
| Mesne profits agreed to be | 300,00 |
| | 1742,00 |

The court direct that proof be received as to whether the judgment of *Grayson* assignee of *Whitaker* executor of *Ray,* was on a bond in which *George Jenkins* was the principle and *J. Hamilton* the surety, or whether *Hamilton was the* principle debtor. The paper filed on the affidavit of *Wm. Jenkins* being in the hand writing of the counsel in the cause, although not good as an affidavit, yet considered as a paper signed and filed, by *William Jenkins,* one of the assignees of *G. Jenkins,* and which disclaims all right to the money, is enough to put us on further inquiry.    It was said the administrators of *G. Jenkins,* were entitled to this money, but this is not so, unless the assignees of *G. Jenkins* have paid all the debts he owed at the time of the assignment in trust for his creditors.    Notice for taking depositions must be served on the assignees of *G. Jenkins,* and also on his administrators.

And this sum on *Grayson's* judgment to be retained until the hearing of that matter.

That the appellants receive the amount above stated, of seventeen hundred and forty-two dollars, and that the remaining sum except the amount of *Grayson's* judgment, be distributed according to the decree of the court, except that the interest of the judgment of *Catharine Henderson,* and *Watson's executors,* is not to be calculated after the 25th of June, 1825.